# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

EDWARD GRIFFIN,

        Plaintiff,

v.                                                    Case No:  2:17-cv-280-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## REPORT AND RECOMMENDATION[1]

Plaintiff Edward Griffin seeks judicial review of the denial of his claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 19),[2] and the applicable law.   For the reasons discussed herein, the Court recommends the

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

decision of the Commissioner be reversed and this matter be remanded pursuant to 42 U.S.C. § 405(g), sentence four.

## I.  Issues on Appeal[3]

Plaintiff raises three issues on appeal:[4] (1) whether substantial evidence supports the administrative law judge's ("ALJ") discounting the opinion of Debra Roggow, D.O.; (2) whether the ALJ failed to inquire into a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and (3) whether the ALJ improperly relied on the VE's testimony to find certain jobs exist in significant numbers in the national economy.

## II.  Procedural History and Summary of the ALJ's Decision

On June 5, 2014, Plaintiff filed applications for DIB and SSI, alleging his disability began January 1, 2004, due to coronary artery disease, triple heart bypass (10 years prior), uncontrolled diabetes, and prostate cancer in remission.   Tr. 71, 79, 85–86, 186–87.   Plaintiff's DIB claim was denied initially and upon reconsideration because his onset date was after his date last insured, but his SSI claim was approved with a disability onset date of June 5, 2014.   Tr. 83, 85–86, 93, 95, 103.   On June 1, 2015, Plaintiff requested a hearing before an ALJ on his DIB claim.   Tr. 114.   The ALJ held a hearing on December 3, 2015, during which Plaintiff and VE Silvio S. Reyes testified.   Tr. 33–70.   At the hearing, P44laintiff amended the alleged

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in the Joint Memorandum.

disability onset date to July 31, 2007.[5]   Tr. 38–39.   On January 13, 2016, ALJ Hope E. Grunberg found Plaintiff not disabled through March 31, 2008, his date last insured.   Tr. 27.

At step one, the ALJ found Plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2008."   Tr. 20.   The ALJ determined Plaintiff did not engage in substantial gainful activity from his amended alleged onset date, July 31, 2007, through his date last insured, March 31, 2008.   *Id.*   Next, the ALJ found, through the date last insured, that Plaintiff had severe impairments of coronary artery disease, status post four coronary artery bypass grafting and multiple stenting procedures, peripheral vascular disease, hypertension, hyperlipidemia and hypothyroidism.   Tr. 21.

The ALJ then concluded Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date last insured.   Tr. 22.   The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") through the date last insured to perform light work[6] with

---

[5] Plaintiff initially amended his alleged onset date to July 1, 2007, but when the ALJ asked him if he wanted to amend the date to July 31, 2007, Plaintiff stated he did.   Tr. 38–39.   The ALJ used July 31, 2017, as the alleged onset date.   Tr. 20.

[6] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.   If someone can do light work, [it is

certain limitations, including that he "was limited to understanding, remembering and carrying out simple, routine and repetitive tasks." Tr. 23.   Next, the ALJ found Plaintiff was unable to perform his past relevant work as a plasterer or tile paster through the date last insured.   Tr. 25.   Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could have performed other jobs that exist in significant numbers in the national economy through the date last insured.   Tr. 26.   As a result, the ALJ found that Plaintiff is not disabled.   Tr. 27.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 4, 2017.   Tr. 1.   Accordingly, the January 13, 2016 decision is the final decision of the Commissioner.   Plaintiff filed an appeal with this Court on May 22, 2017.   Doc. 1.   The matter is now ripe for review.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[7]   Substantial evidence is "more than a scintilla, i.e., evidence that must do

---

determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and

more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527, 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV.   Discussion

### a. Whether the ALJ properly discounted the testimony of Dr. Roggow

Plaintiff argues the ALJ did not provide a sufficient explanation for discounting Dr. Roggow's opinion regarding his functional limitations before March 31, 2008. Doc. 19 at 19. He further contends the reasons the ALJ did give—that Dr. Roggow was not treating Plaintiff during the relevant time period and that the record does not support her opinion—are invalid. Id. at 19–22. First, Plaintiff explains that SSR 83-20, 1983 WL 31249, at *3 (Jan. 1, 1983), specifically allows inferences of disability onset when an exact date is unavailable and the consideration of lay evidence to support those inferences. Doc. 19 at 19. Plaintiff argues Dr. Roggow reviewed medical evidence from before and after March 31, 2008, and the record contains evidence from Plaintiff's wife about what he could do during that time, such that the ALJ should not have discounted Dr. Roggow's opinion. Id. at 19–20.

Second, Plaintiff argues the ALJ should not have concluded from Plaintiff's lack of treatment in 2007 or 2008 that he was not suffering from severe limitations because the gap in treatment can be explained and excused by his lack of medical insurance. Id. at 20. Plaintiff states the ALJ cannot substitute his judgment for a medical professional by assuming a lack of emergency room visits meant that Plaintiff was doing well during that time. Id. Nor, Plaintiff contends, should the ALJ have relied on Plaintiff's statement during a visit to James C. Ricely, D.O. in

December 2013 that he had been doing well, without chest pain for years prior to the episode he was currently experiencing, to conclude Plaintiff retained very substantial functional capacity for a lengthy period. *Id.* at 21 (citing Tr. 24). Plaintiff contends the ALJ erred in relying on this statement because it was made in 2013, not 2007 and early 2008, and he does not have to be completely unable to function to qualify as disabled. *Id.*

The Commissioner responds that Dr. Roggow was an examining, not treating, physician, whose opinion was not entitled to any deference because she saw Plaintiff for the purpose of supporting his claim for disability. *Id.* at 23. The Commissioner further argues the ALJ properly considered the nature and extent of Dr. Roggow's relationship with Plaintiff, and nothing in the record suggests what evidence Dr. Roggow actually reviewed or how that evidence supported her opinion. *Id.* at 24. The Commissioner points out Plaintiff's citation of his wife's testimony to challenge the ALJ's conclusions is unavailing because the ALJ rejected his wife's testimony as unsupported and inconsistent with the record. *Id.* at 24–25 (citing Tr. 25). The Commissioner argues that, while the ALJ did not delve into detail about the lack of support in the record, she earlier explained what the record showed, which allows for meaningful review. *Id.* at 25. The Commissioner argues Plaintiff's claims regarding his lack of insurance are false because he testified he could go to the VA any time but did not so until 2011 when he could not put up with his condition anymore. *Id.* (citing Tr. 49). The Commissioner contends the ALJ made commonsense observations that if Plaintiff had been in distress, he would have gone

to the emergency room, and when he finally did seek treatment, he stated that he had not been having any issues until recently. *Id.* at 25–27.

In evaluating the medical opinions of record, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Winschel*, 631 F.3d at 1178–79.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Medical source opinions may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004).

Plaintiff saw Dr. Roggow for a disability evaluation.  Tr. 1105.[8]  Dr. Roggow performed an examination of Plaintiff on December 1, 2015, and completed a Medical Source Statement ("MSS") form that same day.  Tr. 1102–1108.  In the MSS, Dr. Roggow opined, as of March 31, 2008, Plaintiff could never lift or carry 20 pounds or more, citing as supporting "objective evidence/diagnosis": "shortness of breath, chest pain—office observations."  Tr. 1102.  She further opined, again as of March 31, 2008, Plaintiff could stand and/or walk for a total of less than 2 hours in an 8-hour workday, citing "limited endurance, short of breath in office" as the "objective evidence/diagnosis" supporting her opinion.  *Id.*  Citing no objective evidence/diagnosis for support, Dr. Roggow also opined that, as of March 31, 2008, Plaintiff would need to take a 15–20 minute break for medical reasons every 2 hours, as well as elevate his legs above his heart for an unspecified amount of time.  *Id.*  Dr. Roggow also checked the "Yes" boxes indicating that (1) her opinions were provided within a reasonable degree of medical certainty; and (2) she "read the medical records before and after the onset date of disability."  *Id.*  In her examination notes, after noting a history of coronary heart disease with a quadruple bypass in 2001 and stents placed multiple arteries, most recently in April 2015, and a pacemaker insertion in May 2015, Dr. Roggow stated her impression was Plaintiff had a limited ability to lift and carry more than 10 pounds and could not walk more

---

[8] The record contains a duplicate of Dr. Roggow's evaluation and examination notes. Tr. 1110–18.

than 50 yards "without stopping to rest due to chest pain and shortness of breath. Disabled from gainful employment due to cardiac condition."   Tr. 1106–08.

> The ALJ succinctly addressed Dr. Roggow's opinion:
>
> The undersigned also considered the December 1, 2015, opinion of Debra Roggow, D.O.   (9F; 10F).   Although Dr. Roggow's opinion concerns [Plaintiff's] functional limitations as of March 31, 2008, the record does not establish that she treated him at that time, and does not support her opinion that [Plaintiff] is limited to the sedentary exertional level.[9] (10F at 1).   Accordingly, the undersigned gave little weight to this opinion as well.

Tr. 25.   As an initial matter, Dr. Roggow's MSS opinion essentially is an assessment of Plaintiff's ability to work or RFC, and the ALJ was not required to accord any weight to this assessment.   "A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."   *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).   Thus, the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ."   20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); *see* SSR 96-6p, 1996 WL 374180 (July 2, 1996).   Nonetheless, the Court recommends the ALJ adequately articulated specific reasons for discounting Dr. Roggow's opinions, and the record reflects good cause for doing so.

---

[9] The regulations define sedentary work as work that involves:

[L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

*See e.g.*, *Crawford*, 363 F.3d at 1155; *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2014).   The ALJ "may reject any medical opinion if the evidence supports a contrary finding."  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted).

As noted by the Commissioner, Dr. Roggow was not Plaintiff's treating physician, but instead saw him only one time, seven years after the date he was last insured.  Doc. 19 at 24; Tr. 1101–1108.   Although she indicated on the MSS form by checking a box that she had reviewed records before and after the onset date of disability, there is no indication of what those records were or how they informed her opinion that Plaintiff's condition existed as of March 31, 2008.   Tr. 1101.   Indeed, in making his argument, Plaintiff does not cite to Dr. Roggow's records but refers the Court to a report Plaintiff made to Dr. Ricely on December 24, 2013, in which Plaintiff stated he had 30–45 seconds of chest pain several weeks before that went away after resting, which was "similar to what he had prior to his bypass in 2001."   Tr. 718. There is no indication Dr. Roggow reviewed this record, and it does not purport to reflect Plaintiff's condition consistently from 2001 through to the date of the record. Tr. 718.   As the ALJ found, Dr. Ricely's record suggests the opposite, because Plaintiff had not felt chest pain like what he experienced in 2001 "for years."  *Id.* Additionally, Dr. Roggow gave no explanation of how she concluded that Plaintiff's condition existed in 2008.   For those limitations for which she provided supporting observations, both were based on her examination of Plaintiff that day.   Tr. 1101.

Accordingly, the ALJ did not err in discounting her opinion as unrelated in time to Plaintiff's condition before the date he was last insured.

Substantial evidence supports the ALJ's conclusion because her opinion was unsupported by any reference to medical records from the relevant time period or even her own determinations that such limitations had persisted during that time. *See Phillips*, 357 F.3d at 1240–41 (holding an ALJ may properly discount the opinion even of a treating physician if the opinion is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's own medical records). Although an ALJ generally will give more weight to the opinion of an examining physician over one who has not examined the claimant, the opinion of a non-treating physician is not entitled to any deference or special consideration. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

As to the second argument, Plaintiff contends the record supports a finding that he was limited to sedentary work, but he does not cite to any evidence beyond Dr. Ricely's note.[10]   Doc. 19 at 22.   Even if Plaintiff could do so, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one. *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at

---

[10] Although Plaintiff earlier cites his wife's opinion as support for his limitations, the ALJ discounted her opinion as unsupported by the record.   Tr. 25. 1119–20.   Plaintiff does not challenge the ALJ's treatment of his wife's opinions; thus, this issue is waived. *Access Now*, 385 F.3d at 1330.

1358.   The ALJ focused on the lack of evidence from the relevant time period, noting that Plaintiff had a four-vessel coronary artery bypass graft in 2001, then numerous cardiac catheterizations in 2002, 2003, and 2005.   Tr. 24, 1069–71, 1078–81, 1087–88, 1093–98.   The ALJ noted when Plaintiff saw Joseph Califano, M.D. in 2006, he was doing well.   Tr. 24, 379.   In July 2007, Plaintiff underwent an additional cardiac catheterization after experiencing four months of pain with activity.   Tr. 379–82, 1072–73.   The ALJ concluded the 2007 procedure was successful.   Tr. 24. She based this conclusion on the absence of treatment after the procedure until Plaintiff began experiencing chest pain and shortness of breath in 2013.   Tr. 24; 718.   At that time, Plaintiff reported that he had been doing well for years until the recent episode.   Tr. 24; 718.

Plaintiff does not dispute this absence of medical records.   He contends instead that the gap in treatment following his 2007 surgery should not be held against him because it was based on his inability to afford medical treatment.   Doc. 19 at 20.   The ALJ addressed this issue by noting "the absence of even emergency room treatment records in the years following the 2007 procedure indicates that it was successful in alleviating his most functionally limited symptoms, and that he did not experience any medical emergencies during this period."   Tr. 24.   The ALJ further noted that Plaintiff's statement to Dr. Ricely that he had been doing well for years supported the ALJ's conclusion that he had alleviated at least some of his symptoms for a rather lengthy period.   *Id.*   Substantial evidence supports this conclusion, both in Dr. Ricely's notes and the absence of any emergency room visits

from the records that would suggest he was suffering from the degree of debilitation he claimed.   Tr. 718.

Plaintiff's situation is distinguishable from the case he cites, *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-cv-1453-Orl-TBS, 2015 WL 1268257 (M.D. Fla. Mar. 19, 2015). Doc. 19 at 20–21.   There, the court found the ALJ erred because she did not give the plaintiff the opportunity to explain the lack of treatment; improperly skimmed over 180 pages of treatment notes in one paragraph of her decision, including recommendations from two different doctors that the plaintiff needed back surgery she could not afford; ignored statements from a chiropractor, examining physician, and two state-agency physicians regarding the objective medical evidence supporting her subjective complaints of pain and inability to sit or stand for more than a half an hour; and improperly interpreted MRI scans and nerve conduction tests herself to reach the conclusion that the plaintiff did not suffer from the alleged impairments that would have precluded her from sedentary work.   *Sneed*, 2015 WL 1268257, at *5–6.

In this case, Plaintiff does not cite evidence the ALJ ignored that would have supported his testimony regarding the existence of his impairments following his 2007 procedure or suggested that he needed further procedures that he could not afford.   The evidence the ALJ cited—the notes of Drs. Califano and Ricely regarding Plaintiff's reported condition and the lack of any other treatment evidence from that period—was inconsistent with Dr. Roggow's conclusion that Plaintiff was limited to sedentary work due to shortness of breath and chest pain as of March 31, 2008.

Substantial evidence therefore supports the ALJ's discounting Dr. Roggow's opinion as unsubstantiated by the record. The Court therefore recommends finding the ALJ did not err in discounting Dr. Roggow's opinion.

###### b. Whether the ALJ erred at Step Five

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy the claimant can perform given his RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE. *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559; 20 C.F.R. §§ 404.1566, 416.966. A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations. *Jones*, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted). While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record. *Crawford*, 363 F.3d at 1161.

> i.   *Whether the ALJ properly resolved a conflict between the VE's testimony and the DOT*

Plaintiff argues the ALJ was misinformed as to whether the VE's testimony was consistent with the DOT because the ALJ limited Plaintiff to simple, repetitive work, yet the VE identified jobs with a reasoning level of 2 that he could perform. Doc. 19 at 28–30.   Plaintiff further contends the ALJ failed to develop the record by not asking the VE for a reasonable explanation of the apparent conflict and instead erroneously relied on the VE's testimony that no conflict existed.   *Id.* at 31 (citing *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).   Plaintiff argues that a reasoning level 2, which requires the ability to carry out detailed written or oral instructions, is inconsistent with the ability to understand and carry out simple instructions.   *Id.* at 31–32.   The Commissioner responds that Plaintiff's representative had the opportunity to address any supposed conflict with the VE and failed to do so.   *Id.* at 33.   She further argues the ALJ asked the VE to inform her of any conflict, who stated none existed, *and* she gave Plaintiff a full opportunity to cross-examine the VE.   *Id.*   The Commissioner also argues that Plaintiff ignores the full definition of reasoning level 2, which requires the application of "*commonsense* understanding to carry out detailed but *uninvolved* written or oral instructions."   *Id.* at 34 (emphasis in original).

The Court recommends the ALJ properly relied on the VE's testimony after asking the VE if his testimony was consistent with the DOT and giving Plaintiff's representative an opportunity to inquire into any alleged conflicts.   Tr. 65–70. Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a

job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." *Id.* If the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the negative, "the ALJ is not required independently to identify whether there is any inconsistency." *Cousins v. Colvin*, No. 2:12-cv-505-FtM-29, 2013 WL 5278271, at *6 (M.D. Fla. Aug. 23, 2013), *report and recommendation adopted as modified*, No. 2:12-cv-505-FtM-29DNF, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013). This is especially true in cases where the claimant does not identify any conflicts at the hearing through questioning the VE, despite being represented by counsel. *See* Garskof v. Astrue, No. 5:07-cv-288-Oc-GRJ, 2008 WL 4405050, at *6 (M.D. Fla. Sept. 26, 2008); *see also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-cv-48-OC-DNF, 2014 WL 582885, at *1 (M.D. Fla. Feb. 13, 2014) ("No conflicts were raised during the hearing by the vocational expert or by Plaintiff's representative. Neither case law nor SSR 00–4p require an ALJ to resolve a conflict that was not identified and was not otherwise apparent.").

Here, the VE testified that his testimony was consistent with the DOT, apart from the restrictions not covered in the DOT (lying down and being off task). Tr. 65. When given the opportunity, Plaintiff's representative did not question the VE about any apparent conflict between his testimony and the DOT, particularly with regard to the limitation that Plaintiff be limited to simple, routine and repetitive tasks. Tr.

23, 65–70.   The ALJ was not under an independent obligation to identify and resolve any inconsistency aside from those identified by the VE.   *See Dickson*, 2014 WL 582885, at *5; *Leigh v. Comm'r of Soc. Sec.,* 496 F. App'x 973, 975 (11th Cir. 2012). Thus, there was nothing to indicate to the ALJ that there was a conflict to address. *See Garskof,* 2008 WL 4405050, at *6; *see also Dickson*, 2014 WL 582885, at *5.

Indeed, courts in this circuit have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks as long as those jobs have an SVP[11] level of two, which correlates to unskilled work.   *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016); *Hurtado v. Astrue*, Case No. 09-60930-CIV, 2010 WL 1850261, at *12 (S.D. Fla. Apr. 14, 2010); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (citation omitted); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661–62 (11th Cir. 2007); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014)).   All three of the jobs the VE identified Plaintiff could perform have an SVP of 2, and he specifically referred to these jobs as unskilled.   Tr. 26, 63.   SSR 00-4p provides that unskilled work corresponds to an SVP of 1 or 2 in the DOT.   *See* SSR 00-4p, 2000 WL 1898704, at *3.   Unskilled work requires "little or no judgment to do simple duties."   20 C.F.R. §§ 404.1568(a), 416.968(a).   Thus, these positions do not exceed Plaintiff's mental limitations in the RFC to perform simple, routine,

---

[11] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00–4p, 2000 WL 1898704 at *3.

repetitive work.   Tr. 23.   Because there was no inconsistency between the VE's opinion and the DOT, the Court recommends the ALJ's decision is supported by substantial evidence in this regard.

> ii.   *Whether substantial evidence supports the ALJ's determination as to the number of jobs in the national economy*

Plaintiff argues the ALJ should not have relied on the VE's unreliable testimony as to the number of jobs in the national economy he could perform, citing the Seventh Circuit Court of Appeal's decision in *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014).   Doc. 19 at 12–13.   He argues the VE provided job statistics in Occupational Employment Statistics ("OES") categories, which the VE admitted were actually for a larger category than the jobs he found Plaintiff could perform, but the VE was unable to reduce the available numbers of jobs accordingly.   *Id.* at 13.   The Commissioner responds[12] the VE testified that the OES indicates there were 360,000 jobs for the OES category containing pack inserter, 400,000 jobs for the OES category containing garment sorter, and 300,000 jobs for the OES category containing towel folder.   *Id.* at 17.   She points out Plaintiff does not dispute that he can perform these three jobs.   *Id.*   The Commissioner argues Plaintiff does not dispute that a certain number of jobs exist in the national economy, and the VE's testimony was adequate

---

[12] The Commissioner initially argues that Plaintiff's first argument is a "red herring" because the overwhelming evidence shows that Plaintiff was not disabled before his date last insured.   Doc. 19 at 15.   The Court's review is limited to whether substantial evidence supports the Commissioner's decision; if it decides that substantial evidence does not support a finding, it cannot decide the facts anew or re-weigh the evidence.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) .

to support the ALJ's conclusion that the number is a significant one because there is no exact minimum number under Eleventh Circuit authority.   *Id.*

Work exists in the national economy if it exists in significant numbers either in the region where a claimant lives or in several regions of the country.   *See* 42 U.S.C. § 1382c(a)(3)(B); 423(d)(2)(A); 20 C.F.R §§ 404.1566(a), 416.966; *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005).   In this context, the Eleventh Circuit has held that "the appropriate focus is the national economy."   *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015); *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule. As the court recently noted,

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations.   We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (quoting *Allen* 816 F.2d at 603).   In *Atha*, the court upheld the ALJ's decision that 440 jobs in Alabama and 23,800 jobs nationally, which the VE testified that Plaintiff could perform, constituted a significant number.   *Id.* at 935. In *Allen*, the court of appeals upheld the ALJ's finding that work existed in significant numbers where the VE testified that there were 174 small appliance repairman positions in the area of Georgia where the claimant lived, 1,600 general appliance repair jobs in the state, and 80,000 such jobs nationally, of which "[a] considerable number ... [were] in the small appliance field."   *Allen*, 816 F.2d at 602.   The court

stressed that because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, it could not reweigh the evidence or substitute its judgment for that of the Secretary.  *Id.*

Here, when asked whether other jobs existed for an individual with the same restrictions as Plaintiff could perform, the VE responded affirmatively:

> A:   Yes, one would be pack inserter.   It has an unskilled SVP level of 2, an exertional level of light.   The DOT is 062.567-018.   In the national economy, approximately 360,000 jobs.   Furthermore, he could perform a garment sorter.   This has an unskilled SVP level of 2 and an exertional level of light.   The DOT is 202.687-014.   In the national economy, approximately 400,000 for this.   Next one is a towel folder.   This has an unskilled SVP level of 2, it is at an exertional level of light.   DOT is 589.687-014.   Within the national economy, approximately 300,000 jobs.
>
> Q:   And you provided us with the number of jobs currently.   Have the numbers been similar to the numbers of jobs that would have existed in these occupations back in 2007 and 2008?
>
> A:   I believe so, yes.

Tr. 63.   On cross-examination, the VE stated that the source of the job numbers he testified to was the OES.   Tr. 67.   He further explained:

> Q:   Okay.   And are they provided as data for the individual jobs of tag inserter, garment sorter?
>
> A:   I am sorry.   Say that again?
>
> Q:   Do they represent the individual job of tag inserters? I mean, are there 350,000 tag inserter jobs or is that a larger job category that includes tag inserters?
>
> A:   That's a larger job category that includes tag inserters.
>
> Q:   So, how broad is that larger category?   What?   How many different other occupations are there?
>
> A:   We have several different job titles, so it is difficult [to] count how [many] job titles there are involved in that category.
>
> Q:   Is that 350,000 for the OE group then?
>
> A:   Yes.
>
> Q:   Okay. So there [are] 1526 different occupations in that OES group? That would be production workers, all other, 519199?
>
> A:   That's the title, yes.

> Q: Okay.   I mean, that's an awful lot of jobs so if we took 350,000 and split it up among those 1500 different positions, there's not going to be very many left for tag inserter, are there?
>
> A: It's difficult to say.
>
> Q: Okay. Have you reduced this 350,000 to incorporate ‑ ‑ or to handle those jobs that exceed the exertional and SVP requirements that are under this hypothetical?
>
> A: No, I have not.

Tr. 68–69.   At the hearing, Plaintiff's representative objected to the job numbers as encompassing a broader category than light, unskilled work.   Tr. 69.   In her decision, the ALJ noted Plaintiff's objection to the DOT as outdated and illogical in terms of job numbers, but overruled it, stating the DOT is one of the approved sources for reliable job information in the SSA's regulations.   Tr. 26–27 (citing 20 C.F.R. § 404.1566(d)), 315.

In the Eleventh Circuit, a VE may rely on his knowledge and expertise without producing detailed reports or statistics in support of his testimony.   *See Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012).   In this case, however, the VE did not testify that he relied on his knowledge or expertise in determining the number of jobs in the national economy.   The VE testified instead that the numbers came exclusively from the OES, and when questioned, he could not reduce the numbers to the specific jobs he identified.   Tr. 67–69.   Substantial evidence therefore does not support the ALJ's reliance on the VE's testimony in this case because the VE did not substantiate how many of the identified jobs a person with Plaintiff's RFC would be able to perform.   Tr. 67–69; *cf. Davis v. Berryhill*, CIVIL ACTION NO. 17-CV-293-N, 2018 WL 2208432 (S.D. Ala. May 14, 2018).   In *Davis*, the plaintiff's counsel did

not question the VE as to this issue, but the VE testified as to how she was reducing numbers—based on her knowledge and experience.   *Davis*, 2018 WL 2208432, at *6–7.   Here, Plaintiff's representative did question the source of the job numbers, and the VE testified that he was relying exclusively on an OES group and could not say how the numbers would be reduced if the other jobs in the category that Plaintiff could not perform were excluded.

The Commissioner cites *Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401 (11th Cir. 2012) for the proposition that statistical specificity is not required.[13]   Doc. 19 at 18.   *Pena* is distinguishable, however, because the VE there reduced his estimate of the total number of jobs to account for the plaintiff's limitations.   *Pena*, 489 F. App'x at 402.   The Eleventh Circuit rejected the argument that the VE needed to "specify the formula he used to arrive at the reduced figure and the rationale for that formula to be found reliable." *Id.*   Here, the VE could not reduce the numbers in the first instance.   Although the Court recognizes the three categories the VE identified contained a large number of total jobs, it cannot speculate that substantial evidence supports the finding the number of jobs Plaintiff can perform are significant.   For example, if the category identified as containing 1,526 jobs were divided evenly, there would be only 226 jobs per occupation—a substantial reduction.[14]   The VE did not

_____

[13] The Commissioner also cites *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988), which is not instructive as it does not address the issue presented here.   Doc. 19 at 18.

[14] The Court is using this number to illustrate the broad range within which the actual number of jobs could be.   Because the VE did not know exact numbers, Plaintiff's counsel attempts to provide them here using the Job Browser Pro software, concluding that there are 7,477 full-time tag inserter positions, 8 garment sorter positions, and 204 towel folder positions based on 2014 figures.   Doc. 19 at 13–14.   Plaintiff contends that this number of available jobs, 7,689, is not significant in the national economy.   *Id.* at 14–15.

even indicate that those three jobs were representative of the types of jobs that an individual with Plaintiff's RFC could perform.   Tr. 63.   On remand, the Commissioner may find significant the ultimate number of the jobs available in the national economy that Plaintiff could perform.   On the current record, however, the Court cannot discern what the number of jobs is in the national economy.   Nor can it recommend affirming the Commissioner's decision based on the assumption that the actual number must be significant.   Even if it could decipher the actual number, the Commissioner, not the Court, must determine whether that number is significant.   *See Allen*, 816 F.2d at 602.   The Court therefore recommends reversing the Commissioner's decision and remanding for a proper determination of the number of jobs Plaintiff could perform in the national economy.

## III.   Conclusion

The Court recommends substantial evidence does not support the ALJ's finding that Plaintiff could adjust to other jobs that exist in significant numbers in the national economy and therefore recommends reversal and remand.

---

The Commissioner requests the Court to decline to consider Plaintiff's specific job numbers because that evidence was not before the ALJ, and Plaintiff presented no good cause for failing to submit it to the ALJ.   *Id.* at 17 n.4.   Because the Court does not find substantial evidence supports the ALJ's determination that Plaintiff could perform other work existing in significant numbers in the national economy and recommends remand, it need not address the numbers Plaintiff presents to the Court as the actual number of positions for each of the three identified jobs.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> A.   Determine whether there is other work available in significant numbers that Plaintiff can perform given his Residual Functional Capacity, which may require additional testimony from a vocational expert; and

> B.   Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.   The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff Edward Griffin, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 20th day of June, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record